628 P.2d 959

John McDERMOTT,
Petitioner/Appellant,

v.

Catherine McDERMOTT,
Respondent/Appellee.

No. 2 CA–CIV 3759.

Court of Appeals of Arizona,
Division 2.

Feb. 24, 1981.

Rehearing Denied April 8, 1981.

Review Denied May 5, 1981.

Lieberthal & Kashman, P.C. by David R. Ramage-White, Tucson, for petitioner/appellant.

Ann M. Haralambie, Tucson, for respondent/appellee.

## OPINION

HOWARD, Judge.

Can the trial court award spousal maintenance absent a finding or evidence that the spouse is unable to support herself through appropriate employment? That is the issue on appeal.

The parties had been married approximately 9½ years at the time of the divorce and had no children. Appellee, Catherine McDermott, is 30 years of age, an experienced teacher, and has a bachelor's degree in education and an Arizona teaching certificate. After their marriage in 1970 in Akron, Ohio, the wife completed her bachelor's degree and worked as a teacher throughout the first six years of the marriage. She quit teaching prior to the divorce because she was "burned out" and was, at the time of trial, employed by the City of Tuscon as an administrative assistant earning approximately $13,800 per year.

From 1971 through 1974, appellant completed his bachelor's and master's degrees. He then began working full-time and after almost two years, decided to get his doctorate degree. The parties moved to Tuscon in 1976 for this purpose. At the time of trial, appellant was completing his doctorate degree and making approximately $400 per month gross income.

During the marriage the husband's cash contribution to the marriage was $56,800 while the wife's contribution was $64,100.

The trial court found that:

"Respondent [the wife] has sufficient earning ability to support herself and is not, based on that alone, entitled to any spousal maintenance."

The trial court then found that during the marriage the parties had contemplated and agreed that when appellant finished his formal education, if appellee wanted to further her education, she would be able to do so. It also found that while there was not an express contract that she would financially support him through his educational endeavors and he through hers, it was contemplated by the parties that each would do so. At trial, appellee testified that she

thought she might like to go to law school or get a master's degree in public or business administration.

The trial court then held, as a matter of "equity", that appellant should pay spousal maintenance to appellee in the sum of $500 monthly if she started school by September 1, 1980, for as long as she remained a full-time student in good standing, not to exceed 33 payments; this obligation to continue even if the husband died. What little personal property parties owned was divided according to their agreement made prior to trial.

A.R.S. Sec. 25–319 determines the issue in this case:

> "A. In a proceeding for dissolution of marriage . . ., the court may grant a maintenance order for either spouse *only* if it finds that the spouse seeking maintenance:
>
> \*   \*   \*   \*   \*   \*
>
> (2) Is unable to support himself or herself through appropriate employment . . . or lacks earning ability in the labor market adequate to support himself or herself." (Emphasis added)

The evidence is clear and the trial court concedes in its findings that appellee did not bring herself within the statute. Its decision is based on "equity". Whenever the rights of parties are clearly defined and established by statutory provisions, equity follows the law. *Sult v. O'Brien*, 15 Ariz.App. 384, 488 P.2d 1021 (1971). If appellee is capable of supporting herself through regular employment, she is not entitled to spousal maintenance. *Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977). She argues, however, that what she is entitled to is an "equal opportunity"; that appellant had his chance and now she should have hers. This argument cannot stand in the face of the statute. Neither should the courts be the place where the frustrated expectations and fulfillment of the desires of the parties to a marriage are to be remedied.

We note the case of *In re Marriage of Angerman*, 612 P.2d 1166 (Colo.App.1980).

There the wife supported the husband during marriage as a keypunch operator while he pursued his bachelor's degree and teaching certificate. It was the understanding of the parties that once the husband got his teaching certificate the roles would be reversed and the wife could return to college for graduate work in music looking toward a career in opera or as a teacher. The appellate court upheld the trial court's award of spousal maintenance under a statute similar to ours, based upon a finding that being a keypunch operator was only intended by the parties to be a temporary pursuit dictated by the financial needs of the parties and because appropriate employment required that the wife obtain an advanced degree.

Without commenting on whether Arizona appellate courts would have come to the same conclusion as the Colorado court did, we find the facts here and the facts in *Angerman* to be distinguishable. In *Angerman* it would appear that the wife was a fine arts major and needed an advance degree in order to make a decent living. That is not the case here. Appellee has an Arizona teaching certificate and she has worked as a teacher in Ohio. She already has the means for "appropriate employment" and the award of spousal maintenance was contrary to law.

The award of spousal maintenance is vacated.

BIRDSALL, J., concurs.

HATHAWAY, Chief Judge, dissenting.

I respectfully dissent. In my opinion, the evidence in this case supports the trial court's conclusion that appellee is entitled to spousal maintenance to complete her education so that she may support herself through appropriate employment.

During the marriage, while appellant (petitioner at trial) realized his educational goals, appellee worked as a teacher, as an account clerk, and as an administrative assistant with the City of Tuscon. She testified that she did not wish to remain in the administrative profession. Her desire to go to law school or to obtain an M.B.A. was much more than a passing fancy. She had

discussed the possibility with appellant during the marriage and testified that law school was her "number one choice" and something that she "would like very much to do." This result was contemplated by both parties during the marriage in their tacit agreement that appellant would support appellee's higher education after she had helped support his.

The award of maintenance is addressed in the Uniform Marriage and Divorce Act, Sec. 308, adopted in Arizona as A.R.S. Sec. 25–319. The statute provides:

"Maintenance; computation factors

A. In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

1. Lacks sufficient property, including property apportioned to such spouse, to provide for his or her reasonable needs; and

2. Is unable to support himself or herself through appropriate employment . . .

B. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant factors, including:

1. The financial resources of the party seeking maintenance, including marital property apportioned to such party, and such party's ability to meet his or her needs independently.

2. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment and whether such education or training is readily available.

3. The standard of living established during the marriage.

4. The duration of the marriage.

5. The age, employment history, earning ability and the physical and emotional condition of the spouse seeking maintenance.

6. The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance.

7. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

8. The comparative financial resources of the spouses, including their comparative earning abilities in the labor market."

Appellant strenuously contends that because there was evidence that appellee is able to "support . . . herself" under A.R.S. Sec. 25–319(A)(2), any award of maintenance to her was error. Appellant, like the majority, fails to take into account the entire first clause of Sec. 25–319(A)(2), that the spouse seeking maintenance must be "unable to support himself or herself *through appropriate employment . . .*" (emphasis added). It was the intent of the parties during the marriage that after appellant obtained his doctoral degree and secured appropriate employment, appellee would be entitled to earn a post-graduate degree so that she could secure appropriate employment. The support criterion under A.R.S. Sec. 25–319(A)(2) is not absolute, but relative to the standard of living and wishes of the parties during the marriage. *Lindsay v. Lindsay*, 115 Ariz. 322, 565 P.2d 199 (App.1977); *Casper v. Casper*, 510 S.W.2d 253 (Ky.1974). The fact that appellee had supported herself and appellant during their marriage should not forever destine her to teaching, clerical or administrative work and deny her the opportunity for a post-graduate degree and resultant appropriate employment to which she is equitably entitled under the circumstances of this case. We note that the Colorado Court of Appeals, construing the same maintenance provision under the Uniform Act, reached the same conclusion in *In re Marriage of Angerman*, 612 P.2d 1166 (Colo.App.1980):

"The trial court then found that it was the intent of the parties during the marriage that 'appropriate employment' for wife would be a career in opera or in the teaching of music, that wife's employ-

ment as a keypunch operator was considered by the parties to be a temporary pursuit dictated by the financial needs of the husband's education, that appropriate employment of wife required that she obtain an advanced degree, and that financial assistance in the form of temporary maintenance from the husband was required in order for her to obtain such a degree.

In view of these findings, we hold that the trial court properly applied the [Uniform Act maintenance provisions] to the facts of this case. Considering the intent of the parties as found by the trial court, as well as the contributions of the wife to the education of the husband, we find no abuse of discretion in the trial court's award of temporary maintenance." (citation omitted) 612 P.2d at 1167.

Contrary to the conclusion reached by the majority, I feel *Angerman* is directly in point. Since the wife was able to support herself and her husband as a keypunch operator, she clearly was able to support herself alone in that employment. Under the majority's reasoning, this fact would preclude an award of spousal maintenance. Just as the wife in *Angerman* was not required to remain a keypunch operator, appellee herein should not be forced to rely on an elementary school teaching certificate as her "appropriate employment" while appellant enjoys the fruits of his doctoral degree. *See also, In re Marriage of Marsh*, 64 Ill.App.3d 572, 21 Ill.Dec. 477, 381 N.E.2d 804 (1978).

The commissioners' comment to the Uniform Marriage and Divorce Act, Sec. 308 (1973), is also instructive:

"The dual intention of this section and Section 307 is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance. Only if the available property is insufficient for the purpose and if the spouse who seeks maintenance is unable to secure employment appropriate to his skills *and interests* or is occupied with child care may an award of maintenance be ordered." (emphasis added) 9A U.L.A. 161 (1979).

The trial court has broad discretion in its determination of a reasonable award of spousal maintenance. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 592 P.2d 771 (1979). It is in the best position to tailor the award to the needs arising through transition from the marriage. *Nelson v. Nelson*, 114 Ariz. 369, 560 P.2d 1276 (App.1977). The court below never conceded that appellee did not bring herself within the statute. The decree was entirely consistent with A.R.S. Sec. 25–319. The award in the instant case appears to at least partially effectuate the parties' own plan and permits appellee to equalize her earning capacity with appellant's. Appellee, having performed her part of the agreement, is equitably entitled to reciprocal benefits. I do not believe the legislature intended to stifle and improverish the discretion of the trial court in its task of opening a way for the parties through an often difficult and trying time into their new lives.

I would affirm.